**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **OPPORTUNITY AVIATION, LLC** | § | |
| | § | |
| **v.** | § | **A-06-CA-316 LY** |
| | § | |
| **FLIGHT OPTIONS, LLC** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.  Before the Court are Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim and Motion for Partial Summary Judgment on its Supplemental Complaint (Clerk's Doc. No. 26); Defendant's Response to Plaintiff's Motion for Summary Judgment and Motion for Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment (Clerk's Doc. Nos. 35, 37); and Plaintiff's Reply (Clerk's Doc. No. 42); and Defendant's Reply (Clerk's Doc. No. 52).

## I.  BACKGROUND

In May of 1999, Plaintiff and Defendant entered into a contract where Plaintiff purchased from Defendants a 12.5% interest in a Beechjet 400A ("Aircraft") to be used at the former's leisure (the Plaintiff would have a number of Beechjet to available to it).  That agreement further held that "At any time after 60 months from the Closing, [Defendant] shall have the option to repurchase the

Interest upon 90 days' notice to [Plaintiff] for the Interest Repurchase Value less a 7 percent brokerage fee." However, the parties executed an addendum – the so-called "Side Agreement" – that states:

> Flight Option's program allows [Opportunity Aviation] to continue [it's] ownership for as long as [it] wish[es] subject to the terms of the Operative Agreements, however, Flight Options has the right to discontinue the Beechjet 400A from the fleet and can buy the Interest back at such time. We will not repurchase your interest without entering into a process at the same time to repurchase the other Beechjet 400A aircraft.

*See* Plaintiff's Opportunity Aviation LLC's Motion for Summary Judgment, Exh. 5**.** In early 2005, Defendant asked to repurchase Plaintiff's interest in the aircraft. However, Plaintiff, via an email, reminded Defendant that, per the "Side Agreement," it could not repurchase Plaintiff's interest without doing so with regard to all of the Beechjet aircraft. In a reply email, Defendant's Executive Vice-President, James Miller, apologized, stating "I agree that the contract for this aircraft does not allow for calling the share as long as we operate the Flight Options BeechJet fleet. Please accept my apologies for the inconvenience that this correspondence may have caused. You may disregard the correspondence in question." *See id*. Exh. 6.

Unfortunately, that was not the end of the story. Plaintiff began to have service problems with Defendant's Aircraft. For example, Plaintiff alleges that it would be stranded when attempting to use the aircraft, and that the aircraft would be suddenly unavailable for use even for flights scheduled days in advance. Frustrated, Plaintiff filed suit in state district court alleging, among other causes of action, breach of contract. Defendant removed the suit to federal court and also attempted again to buy back the interest in the aircraft. At this point, Defendant decided that it was *Plaintiff* who had in fact breached the contract for failing to relinquish its interest in the aircraft and filed its

counterclaim.  Plaintiff then filed its Supplemental Complaint alleging that Defendant's attempts to repurchase the interest constituted a breach of the contract.

In the motion before the Court, Plaintiff is seeking summary judgment on Defendant's counterclaim and partial summary judgment on its Supplemental Complaint that Defendant's attempt to repurchase the interest constitutes a breach of the contract.   In its cross-motion, Defendant requests summary judgment on its breach of contract counterclaim, claiming that Plaintiff's refusal to sell back its interest in the Beechjet violates the parties' agreements.

### III.   ANALYSIS

**A.     Standard of Review.**

Under Rule 56, a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "An issue is material if its resolution could affect the outcome of the action."  *Commerce and Industry Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding whether a fact issue exists, the court "must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Id*.

"[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."  *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The nonmovant may not rely on mere allegations in the pleadings.  *Id*.  Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary

judgment. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995).  Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case.  *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997).  The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court."  *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.   Flight Options' Repurchase Right and the Side Agreement.**

At the hearing on the motions at issue, both parties agreed the Side Agreement's meaning was ascertainable and that it had a definite term of duration *as long as* the Court agreed that the touchstone for resolving this dispute is whether Defendant has "enter[ed] into a process" to buy back the other interests it has outstanding in the Beechjet Aircraft 400As.[1]  The quoted language comes from the final sentence in the relevant clause of the Side Agreement: "We will not repurchase your interest without entering into a process at the same time to repurchase the other Beechjet 400A aircraft."  The Court agrees that the contract is for a definite term, and its meaning is clear.  By the plain language of the contract, Flight Options is barred from repurchasing the Plaintiff's interest until it "enter[s] into a process at the same time to repurchase the other Beechjet 400A aircraft."  The ultimate question on the instant motion is therefore whether the summary judgment evidence demonstrates whether Flight Options has entered into this process (or not).

---

[1]At the hearing, Defendant's counsel stated that: "The arguments that the contract is either void or indefinite are really arguments that we only get to if we accept Plaintiffs reading of the contract as requiring the discontinuation [of the Beechjet 400A]."  At the hearing, Plaintiff disavowed that it believed discontinuation of the Beechjet line was necessary before Defendant could buy back its interest.

Before the Court can address the question of whether summary judgment is appropriate on this "process" issue, it must first address whether the Beechjet 400A is the same aircraft as, or is distinct from, the Hawker 400XP.  This issue is important because Flight Options concedes that it is currently adding Hawker 400XPs to its fleet, and if the Hawker 400XP is the same aircraft (for contract purposes) as the Beechjet 400A, Flight Options' argument is much more challenging.

The summary judgment evidence on this point is undisputed.  First, in an interview in the magazine *Helium Report* (a sort of Consumer Reports for the jet set[2] – pardon the pun), Defendant's CEO, Michael Scheeringa, stated that it "has made some big changes to streamline [Flight Option's] fleet" and is now "currently [offering] four different jets spanning four different aircraft classes," the first of which is described as the "Beechjet 400A/Hawker 400XP (light; 7 passengers)."  Second, Plaintiff provides a press release from Defendant in *Business Wire* announcing its plan to modernize its fleet, in which Flight Options notes that it "is actively selling those aircraft represented in its Future Fleet – Beechjet 400A/Hawker 400XP, Hawker 800XP, Citation X and Legacy." *See* Flight Options Witnesses Significant Progress on its Go-Forward Business Plan, Nov. 8, 2005.[3]  Further, consistent with the press releases quoted earlier, on Defendant's website it advertises its currently available aircraft as four, the first of which is the "Beechjet 400A/Hawker 400XP."  *See* http://www.flightoptions.com/hawker400xp.html.  On that link, Defendant states that it "operates the largest Beechjet fleet in the world.  The Beechjet 400A/Hawker 400XP, *the most popular light*

_____

[2]*See*  http://www.heliumreport.com/meta/about-us-000085.php  ("Helium Report is the independent guide for wealthy consumers. We provide analysis and research to assist with high value purchase decisions such as joining a destination club, purchasing a jet membership card, or buying a fraction of a yacht.")

[3]*Available at* http://findarticles.com/p/articles/mi_m0EIN/is_2005_Nov_8/ai_n15783978.

*jet in the industry*, is a top performer in the light jet industry." *Id.* (emphasis added).  Thus, in its

own literature, Defendant itself refers to the Beechjet 400A/Hawker 400XP as a single jet, not two

jets.  Capping this issue off, the FAA certification record treats the two as different brand names for

a single jet. *See* Opportunity Aviation's Excerpted Exhibits Motion for Summary Judgment Hearing

April 18, 2007, Tab 10, p 5 (specifying standards for "Model 400A, Beechjet (Hawker 400XP)").

Defendant's argument concerning the difference between the planes is flawed, and they are properly

considered a single aircraft for purposes of the Side Agreement.

　　　　Thus, when the Court considers the language of the Side Agreement, the question becomes

whether Flight Options has "enter[ed] into a process" to repurchase all of the other interests it has

sold in Beechjet 400A/Hawker XP aircraft.  Understood in this manner, the evidence on this point

is undisputed, and the question is quite easy to answer.  As just noted, as recently as the date on

which this opinion was written, Flight Options' website advertised it as operating "the largest

Beechjet fleet in the industry."  One of the four planes in which a present-day customer can purchase

an interest from Flight Options is the Beechjet 400A/Hawker 400XP.  There is absolutely no

evidence that Flight Options intends to – much less has "entered into a process" of – buying back

all of the interests it has sold in this aircraft.  Flight Options currently owns approximately 70

Beechjets, and has added 65 to its fleet since the Plaintiff signed the Side Agreement.  The *most* that

can be said is that Flight Options is not adding aircraft branded "Beechjet 400A" to its fleet, but

instead is adding Hawker 400XPs.  But this argument goes nowhere when it is understood that the

two names in fact describe a single aircraft.  The evidence makes plain the fact that Defendant's legal

arguments and its business practices run in two different directions.  The Court opts to give weight

to Defendant's actions rather than its rhetoric.  It is clear that Defendant is "actively selling" the

Beechjet aircraft and has not "entered into a process" of buying back the interests in the Beechjets.[4]

Defendant makes the alternative argument that the Side Agreement is void for uncertainty as to time, because Plaintiff is unable to state with specificity what would amount to the "process" required in the Side Agreement as having started.  Defendant reiterated this argument in its rebuttal at the hearing, pointing out that Plaintiff's counsel was unable to state with specificity what would be required for Defendant to "enter in [the] process" called for in the Side Agreement.  Indeed, Plaintiff's counsel analogized to Justice Potter Stewart's famous "I know when I see it" remark regarding obscenity, when asked what would mark the beginning of the "process."  While he wasn't sure exactly what was required, he said, he knew the facts of this case were from the initiation of a process to eliminate the Beechjets from the Flight Options fleet.  Seizing on this, Defendant contends that the contract must therefore be uncertain as to time and terminally vague.

The issue is thus whether the contract can be construed to have sufficiently solid contours; that is to say, is there a definitive act or date that satisfies the completion of the contract?  "[W]here there is a contract, but the contract provides no termination date, either party to the agreement may terminate it upon reasonable notice."  *Bakies v. City of Perryburg*, 843 N.E.2d 1182, 1186 (Ohio 2006); *see also Plastics for Indus., Inc. v. Grief Bros. Corp.*, No. 94CVH10392, 1995 WL 557274, *3 (Ohio Ct. App. 1995) (holding sales agreement terminable at will by either party because no

---

[4]At the hearing, the Court asked counsel for Flight Options that, since it contended it had started the process of buying back interests in Beechjets, when this process had started.  Her response was to point to the affidavit from Flight Options' Vice President, Miller, that the process began when it sold off the first Beechjet in 2004.  The problem with this response is that the email from Miller to Plaintiff quoted in the text (at p. 2) was sent a year later, in 2005.  In that email, Miller specifically apologized for attempting to repurchase Plaintiff's interest, and stated that he "agree[d] that the contract for this aircraft does not allow for calling the share as long as we operate the Flight Options BeechJet fleet."  If the process had in fact started in 2004, there would have been no reason for Miller to have responded as he did in 2005.

definite term of duration); *Trient Partners I Ltd. v. Blockbuster Entertainment*, 83 F.3d 704, 709 (5th Cir. 1996) ("Under foundational principles of contract law, the term of any contract is terminable by one party upon a total or material breach by another party. Accordingly, an agreement which is otherwise indefinite in duration and terminable at will cannot be converted into an agreement of definite duration by the mere transcription of such universals within the text of the contract.")[5]

The Court does not believe that the contract is impermissibly indefinite. As the Court noted at the hearing, there is at least one scenario the Court can imagine – and there are probably many others – that would plainly meet the requirements of the contract. If Flight Options' CEO or Board of Directors were to make the decision to cease flying the Beechjet 400A/Hawker 400XP in a reasonable near-term time frame, and then were to adopt a specific plan by which all interests in the planes would be repurchased and the aircraft sold, and then were to actually begin implementing that plan, the Court believes that the requirements of the Side Agreement would be met such that Flight Options would have the right to repurchase Plaintiff's interest. Importantly, however, Defendant offers no evidence of something even close to this having happened. The inescapable fact is that Defendant's website and its CEO (not to mention the Miller's e-mail) all belie Flight Options' claim that it has "solidly committed" to begin the requisite process. *See* Defendant's Response at 18. Thus, the Court rejects Defendant's argument that the Side Agreement is impermissibly vague or indefinite as to duration.

In sum, the Side Agreement plainly states that Defendant can purchase the Plaintiff's interest in the aircraft upon entering into a process to purchase all the other outstanding interests in Beechjet

---

[5] The Court notes that Ohio law governs this contract, and the parties cite a number of other Ohio cases that are in accord with this unexceptional principle of contract law.

aircraft.  Just as plainly, the evidence shows that this process has not begun.  By tendering payment for Plaintiff's interest in February 2005 (*see* Plaintiff's Motion, Exh. 6), and again on October 12, 2006, (*see id*. at Exh. 7), filing a lawsuit against Plaintiff for breach of contract, and, for a third time, attempting to repurchase the interest in January 2007, (*see id*. at Exh. 9), Defendant has breached the Side Agreement.  Therefore, Plaintiff should be granted summary judgment on its motion on that issue, and Defendant's motion should be denied.  What, if any, damages are remaining is a question that is left for another day.

## RECOMMENDATION

Because there is no genuine issue of material fact on the issue of whether Flight Options breached the agreement between the parties, and Opportunity Aviation is entitled to judgment as a matter of law on this question, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's Partial Motion for Summary Judgment on Defendant's Counterclaim and on Opportunity Aviation's Supplemental Complaint (Clerk's Doc. No. 26), and **DENY** Defendant's Cross-Motion for Summary Judgment *(*Clerk's Doc. No. 35).  The remaining issues on this claim would therefore be damages and attorney's fees.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall

bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 4th day of May, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE